Elwyn **EVANS, Jr.**, Petitioner Below, Appellant,

v.

**JUSTICE OF THE PEACE COURT NO. 19**, Respondent Below, Appellee.

No. 215, 1994.

Supreme Court of Delaware.

Submitted: Jan. 17, 1995.
Decided: Jan. 30, 1995.

---

Jeffrey M. Boyer (argued), and Elwyn Evans, Jr., Wilmington, for petitioner Elwyn Evans, Jr.

James J. Hanley, Dept. of Justice, Wilmington, for respondent State.

Before WALSH, HOLLAND and BERGER, JJ.

HOLLAND, Justice:

This is a civil appeal from the Superior Court. The proceedings originated in the Justice of the Peace Court. At issue is the effort of Elwyn Evans, Jr. ("Evans") to have the Superior Court review a $1000.00 sanction imposed upon him pursuant to Justice of the Peace Court Miscellaneous Rule 5.

Evans filed an appeal for review *de novo* with the Superior Court. The Superior Court dismissed the appeal for lack of jurisdiction. The Superior Court held that the only permissible procedure for review of a Rule 5 sanction was through a petition for a writ of certiorari.

This Court has concluded that the sanction imposed against Evans was a final judgment appealable pursuant to the collateral order doctrine. The statute that authorizes the appeal to the Superior Court provides for a trial *de novo*. 10 *Del.C.* § 9571. Well-established evidentiary principles, however, apply to that unique proceeding and preclude the Justice of the Peace who sanctioned Evans from appearing as a witness. The judgment of the Superior Court is reversed.

*Facts*

On March 17, 1986, the Justice of the Peace Court granted a judgment in favor of Security Pacific Financial Services, Inc. ("Security Pacific") against Alan D. Price ("Price") in the sum of $1548.28 plus $16.00 in costs with interest at 24% per annum from December 4, 1985. On May 16, 1986, Price's wages were attached at the duPont Plant in Seaford, Delaware. As of August 26, 1987, the balance due was $132.05.

On February 8, 1993, Security Pacific turned the Price case over to the Delaware law firm of Evans & Evans for collection. Security Pacific gave Evans records indicating that the principal balance due from Price was $132.05 and that the total due, including interest and costs, was $332.20. On December 16, 1993, Evans filed a pluries execution praecipe in the Justice of the Peace Court, which stated that the judgment entered against Price remained unsatisfied in the amount of $4,074.47, with interest at 24% per annum as of December 13, 1993.

On February 18, 1994, the Justice of the Peace Court, *sua sponte*, issued a Rule to Show Cause. Evans was directed to appear and explain why sanctions should not be imposed against him for violating Justice of the

Peace Court Miscellaneous Rule 5.[1] A hearing was held on Thursday, March 17, 1994. The Justice of the Peace made the following findings:

> The evidence shows that Security Pacific Financial Services sent all the required information to Mr. Evans. It is also clear that Mr. Evans failed to make a reasonable inquiry. Mr. Evans attempted to shift the duty to his paralegal, but under the rule it is the duty of the signing attorney to make reasonable inquiry.

> .　　.　　.　　.　　.

> This was not an isolated incident. On at least two other occasions, Mr. Evans and/or the law firm at Evans & Evans has attempted to collect, through attachment, interest on an old debt far in excess of that which was actually due.

The Justice of the Peace concluded that Evans' violation of Rule 5 warranted a sanction. Evans was ordered to pay the sum of $1000.00 to the Justice of the Peace Court.[2]

### Final Judgment

### Collateral Order Doctrine

The collateral order doctrine was promulgated almost fifty years ago in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Nevertheless, it is seldom invoked by aggrieved persons. This is attributable, in part, to the fact that by definition the collateral order doctrine only applies to:

> that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

> .　　.　　.　　.　　.

> We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.

*Id.* at 546–47, 69 S.Ct. at 1225–26.

This Court applied the collateral order doctrine six years ago in *Gannett Co., Inc. v. State*, Del.Supr., 565 A.2d 895, 899–900 (1989). In *Gannett*, as in other cases, the collateral order doctrine is referred to as an exception to the final judgment rule. *Id.* It is more accurate to characterize the doctrine as a common law recognition that certain collateral orders constitute final judgments.

### Rule 5 Sanction

### A Collateral Order

### Constitutes Final Judgment

■ The original action in the Justice of the Peace Court was a collection proceeding between Evans' client, Security Pacific, and

---

1. The rule provides:

   > Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. J.P.Ct.Misc. R. 5.

2. When Evans refused to pay the sanction, he was found to be in contempt. A capias was issued for Evans arrest. Evans has posted a $1000.00 supersedeas bond with this Court as a condition for staying the Justice of the Peace Court's order during the pendency of this appeal.

Price. As a result of Evans' apparent violation of Rule 5, the Justice of the Peace *sua sponte* initiated a collateral proceeding by directing Evans to appear and show cause why he should not be disciplined. After a hearing, the Justice of the Peace found Evans had violated Rule 5 in the original underlying proceeding, as well as on prior occasions. In an effort to preserve the integrity of its judicial process, the Justice of the Peace sanctioned Evans. In *Gannett*, this Court described the attributes of a collateral order comprising a final judgment: first, it determines a matter independent of the issues to be resolved in the original underlying proceeding; second, it binds a person who was not a party in the original underlying proceeding; and, third, it has a substantial effect on important rights. *Gannett Co., Inc. v. State,* 565 A.2d at 900.

■ The purpose of a Rule 5 sanction is to punish the transgressor and to deter others. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 390, 110 S.Ct. 2447, 2453, 110 L.Ed.2d 359 (1990). It is intended to secure the proper functioning of the legal system, independent of the underlying cause of action. *Id.* The *ratio decidendi* of the United States Supreme Court's holding in *Cooter & Gell* regarding Federal Rule 11 is equally appropriate to the facts of this case.

> [T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

*Id.* at 396, 110 S.Ct. at 2456.

We have applied the holdings in *Gannett, Cohen,* and *Cooter & Gell* to the facts of this case. The record reflects that the collateral order for Evans to pay $1000.00 as a sanction

for violating Rule 5 constituted a final judgment. Therefore, it was appealable to the Superior Court. 10 *Del.C.* § 9571.[3] *Gannett Co., Inc. v. State,* 565 A.2d 895. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).

### *Evidentiary Limitations*

### *Sanction Trial De Novo*

■ We have concluded that, pursuant to the collateral order doctrine, Evans had the right to appeal the Rule 5 sanction to the Superior Court as a final judgment. Section 9571(c) provides that the appeal from the Justice of the Peace Court to Superior Court shall take the form of a trial *de novo*. Since this matter will be remanded for that purpose, there are well-settled evidentiary rules which must be followed in that unique *de novo* review of a judicial sanction.

The Justice of the Peace who imposed the sanction is precluded from appearing or being compelled to appear as a witness in the Superior Court. *Brooks v. Johnson,* Del. Supr., 560 A.2d 1001 (1989). The United States Supreme Court has held that the examination of a judge's mental process would be destructive of judicial responsibility and undermine the integrity of the judicial process. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941) (*citing Fayerweather v. Ritch,* 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904)). Similarly, this Court has held that "[p]ersons performing adjudicating functions are not subject to examination in furtherance of the litigation objectives of the parties." *Brooks v. Johnson,* 560 A.2d at 1002.

The Justice of the Peace Court's disposition will not be without evidentiary support in the Superior Court. The final judgment order sanctioning Evans, consisting of a

---

**3.** The jurisdiction of the Superior Court to hear appeals from the Justice of the Peace Court is set forth in 10 *Del.C.* § 9571:

    (a) From *any final order, ruling, decision or judgment* of the court in a civil action there shall be the right of appeal to the Superior Court of the State in the county in which said order, ruling, decision or judgment was rendered.

    (b) The appeal shall be taken within 15 days of the final order, ruling, decision or judgment.

    (c) The appeal shall be a trial *de novo*.

    (d) The Superior Court shall establish appeal procedures and supersedeas bond requirements by rule.

*Id.* (emphasis added).

578

three-page written disposition, is admissible *per se* at the trial *de novo* in the Superior Court. Witnesses, other than the Justice of the Peace, may testify regarding matters which support the imposition of a sanction against Evans.

Finally, we note that, except for the unique evidentiary restriction regarding the testimony of the Justice of the Peace, the Superior Court proceeding will be a trial *de novo*. Two issues will be presented to the Superior Court: first, the allegation that Evans violated Justice of the Peace Court Miscellaneous Rule 5; and, second, the appropriate sanction, if any. In the trial *de novo*, both issues are subject to the independent determination of the Superior Court.

### State of Delaware
### Real Party in Interest

■ When Evans filed his appeal to the Superior Court, he named the Justice of the Peace who sanctioned him as the appellee rather than the Justice of the Peace Court. That individual Justice of the Peace had and has no cognizable personal interest in the outcome of Evans' appeal to the Superior Court. *Accord Brooks v. Johnson,* 560 A.2d at 1004 (*citing Wilmington Trust Co. v. Barron,* Del.Supr., 470 A.2d 257, 261–62 (1983)). The Justice of the Peace initiated the collateral proceeding and imposed a sanction upon Evans for the purpose of preserving the integrity of the judicial process. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. at 390, 110 S.Ct. at 2453.

The real party in interest in the collateral proceeding regarding Evans is the Justice of the Peace Court in its institutional capacity as a judicial tribunal. The collateral proceeding commenced in the Justice of the Peace Court is properly captioned either "*In Re Evans*" or "*In the Matter of Evans.*" The proper caption of the proceeding on appeal to the Superior Court is "*Elwyn Evans, Jr. v. Justice of the Peace Court No. 19.*" [4]

The Justice of the Peace Court is an instrumentality of the State of Delaware. The Delaware Department of Justice has properly recognized that it must represent the insti-

tutional interests of that tribunal in Evans' litigation. It has represented those interests in Evans' appeal to the Superior Court, in his appeal to this Court, and will continue to do so when this matter is remanded. 29 *Del.C.* § 2504(3).

### Conclusion

The judgment of the Superior Court is reversed. This matter is remanded for further proceedings in accordance with this opinion.

4. This Court has corrected the caption *sua sponte.*